John DILLARD, et al., Plaintiffs,

v.

CITY OF ELBA, Defendant.

Civ. A. No. 87–T–1201–N.

United States District Court,
M.D. Alabama,
Northern Division.

Oct. 20, 1993.

*ORDER*

MYRON H. THOMPSON, Chief Judge.

In this lawsuit, a plaintiff class of African–Americans challenged the "at large" system used to elect councilmembers for defendant City of Elba, as violating § 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C.A. § 1973. By order entered on April 1, 1988, the court approved a consent decree requiring that the 1988 elections for city council be conducted under a five single-member district plan. In 1992, the plaintiffs filed a motion for additional relief claiming that the city must reapportion itself because the 1988 redistricting plan no longer meets the one-person one-vote requirements of the United States Constitution. By order entered on July 28, 1993, the court ordered the city to conduct elections under a new plan which met the one-person one-vote requirements. This cause is now before the court on the plaintiffs' motion for attorney's fees and expenses incurred as a result of their request for additional relief. For the reasons that follow, the court concludes that the plaintiffs are entitled to recover $6,670.00 in attorney's fees and $463.45 in expenses, for a total of $7,133.45 from the City of Elba.

I.

The plaintiffs seek an award of attorney's fees under the Voting Rights Act. The Act provides that

"In any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the cost."

42 U.S.C.A. § 1973l(e). This provision, which is similar in substance and purpose to the Attorney's Fees Awards Act of 1976,[1] serves the familiar purpose of encouraging private litigants to act as "private attorneys general" to vindicate their rights and the rights of the public at large, by guaranteeing to them, if they prevail, a reasonable attor-

James U. Blacksher; Edward Still, Reeves & Still, Birmingham, AL, and Julius L. Chambers and Scherlyn Ifill, NAACP Legal Defense Fund, New York City, for plaintiffs.

Jimmy Evans, Alabama Atty. Gen., Mort P. Ames, Asst. Atty. Gen., Office of Atty. Gen., Montgomery, AL, and Mark Vaughn, Elba, AL, for defendant.

1. 42 U.S.C.A. § 1988. Plaintiffs also seek to recover under this provision.

ney's fee.[2] With this provision, Congress sought to create an alternative means to ensure, without the expenditure of additional public funds, that the policies underlying the Voting Rights Act are implemented and enforced successfully. Guaranteed fees. were considered to be essential to this end in light of concerns over the financial ability of victims of discrimination to bring such actions and the fact that the relief sought and obtained is often nonmonetary. *Donnell v. United States,* 682 F.2d 240, 245–46 (D.C.Cir. 1982), *cert. denied,* 459 U.S. 1204, 103 S.Ct. 1190, 75 L.Ed.2d 436 (1983).

The City of Elba has not questioned that the plaintiffs are the prevailing parties in this litigation and thus entitled to reasonable attorney's fees. Indeed, the city could not do so in good faith. This lawsuit is an offshoot of a voting rights case brought in 1985. *Dillard v. Crenshaw County,* 640 F.Supp. 1347 (M.D.Ala.1986); 649 F.Supp. 289 (M.D.Ala. 1986), *affirmed in part and remanded in part,* 831 F.2d 246 (11th Cir.1987), *reaffirmed on remand,* 679 F.Supp. 1546 (M.D.Ala.1988). Two years later, in 1987, the lawsuit was expanded state-wide to include the City of Elba and 182 other local governing bodies. *Dillard v. Baldwin County Board of Education,* 686 F.Supp. 1459, 1461 (M.D.Ala. 1988) (discussing the history of the *Dillard* litigation). As previously stated, the plaintiffs entered into a consent decree with the city requiring that, with the 1988 elections, the city elect its council members under a single-member district plan, and the plaintiffs subsequently prevailed in their effort to have the city reapportion its districts for the 1993 election to meet the one-person one-vote requirements. Therefore, the only issue before the court is what the fee should be.

## II.

■ The starting point in setting any reasonable attorney's fee is determining the "lodestar" figure—that is, the product of the number of hours reasonably expended to prosecute the lawsuit and the reasonable hourly rate for non-contingent work performed by similarly situated attorneys in the community. After calculating the lodestar fee, the court should then proceed with an analysis of whether any portion of this fee should be adjusted upwards or downwards. *Hensley v. Eckerhart,* 461 U.S. 424, 433–34, 103 S.Ct. 1933, 1939–40, 76 L.Ed.2d 40 (1983).

In making the above determinations, the court is guided by the 12 factors set out in *Johnson v. Georgia Highway Express,* 488 F.2d 714, 717–19 (5th Cir.1974). *See Blanchard v. Bergeron,* 489 U.S. 87, 91–92, 109 S.Ct. 939, 943, 103 L.Ed.2d 67 (1989); *Hensley,* 461 U.S. at 434 n. 9, 103 S.Ct. at 1940 n. 9. These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or. contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the· experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of professional relationship with the client; and (12) awards in similar cases.

### A. Reasonable Hours

■ James U. Blacksher and Edward Still represented the plaintiffs in this matter. They seek compensation for the following hours:

| | |
|---|---|
| Blacksher | 18.6 hours; |
| Still | 4.4 hours; |

The court has considered two *Johnson* factors—the novelty and difficulty of the case, and the amount involved and the result obtained—in assessing the reasonableness of the hours claimed. A cursory review of such cases as *Brown v. Thomson,* 462 U.S. 835, 103 S.Ct. 2690, 77 L.Ed.2d 214 (1983), *White*

---

**2.** Indeed, the similarity between the language and underlying purposes of the fee award provisions of the Voting Rights Act, § 1973*l*(e), the. Attorney's Fees Awards Act of 1976, § 1988, and the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e–5(k), has led the Eleventh Circuit to conclude that the standards for awarding fees under the various provisions should be generally the same. *Brooks v. Georgia State Board of Elections,* 997 F.2d 857, 861 (11th Cir.1993); *Maloney v. City of Marietta,* 822 F.2d 1023, 1025 n. 2 (11th Cir.1987) (per curiam).

*v. Regester,* 412 U.S. 755, 93 S.Ct. 2332, 37 L.Ed.2d 314 (1973), and *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), would indicate that even the simplest one-person one-vote case would be formidable to an attorney unfamiliar with the voting rights law. Because an attorney with less knowledge and experience than plaintiffs' attorneys would have taken many more hours to pursue this litigation, the number of hours claimed could be viewed as conservative. The court finds, in light of these circumstances, that all the hours expended and claimed were not "excessive, redundant, or otherwise unnecessary," *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1939–40, 76 L.Ed.2d 40 (1983), but were necessary, and directly related, to securing the relief obtained. Blacksher and Still are entitled to the full number of hours claimed.

### B. Prevailing Market Rate

■ "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Authority of Montgomery,* 836 F.2d 1292, 1299 (11th Cir.1988). To determine the prevailing market rate, the court will consider the following *Johnson* factors: customary fee; skill required to perform the legal services properly; the experience, reputation and ability of the attorney; time limitations; preclusion of other employment; contingency; undesirability of the case; nature and length of professional relationship with the client; and awards in similar cases.

*Customary Fee:* The plaintiffs contend that the customary fee for an attorney of similar experience in the community supports an hourly non-contingent fee of $350 for Blacksher and Still. The evidence shows that Alabama attorneys practicing in the same and similar areas of law with approxi-

mately the same experience and skill as plaintiffs' attorneys charge a non-contingent fee of at least $290 an hour.[3]

*Skill Required to Perform the Legal Services Properly:* It cannot be questioned that voting rights litigation requires a highly skilled attorney. As explained earlier, even the simplest voting rights case would be daunting to an attorney who had not specialized in voting rights law.

*Experience, Reputation, and Ability of the Attorney:* Blacksher and Still have now rightfully earned the reputation as two of the most experienced, knowledgeable, and able voting rights lawyers in the State of Alabama, if not the nation. They have to their credit such trail-blazing cases as *Bolden v. City of Mobile,* 423 F.Supp. 384 (S.D.Ala. 1976), *aff'd* 571 F.2d 238 (5th Cir.1978), *reversed and remanded,* 446 U.S. 55, 100 S.Ct. 1490, 64 L.Ed.2d 47 (1980), *reaffirmed on remand,* 542 F.Supp. 1050 (S.D.Ala.1982), and *Hunter v. Underwood,* 471 U.S. 222, 105 S.Ct. 1916, 85 L.Ed.2d 222 (1985). Blacksher has also written extensively in the area. *See, e.g.,* J. Blacksher and L. Menefee, "At–Large Election and One Person, One Vote: The Search for the Meaning of Racial Vote Dilution," *in Minority Vote Dilution* (C. Davidson ed.) (1984).

*Time Limitations:* Where there has been "[p]riority work that delays the lawyer's other legal work," this factor requires "some premium." *Johnson,* 488 F.2d at 718. The case was litigated under the pressure of an impending election.

*Preclusion of Other Employment:* This factor "involves the dual consideration of otherwise available business which is foreclosed because of conflicts of interest which occur from the representation, and the fact that once the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes."

---

**3.** As originally envisioned by Congress, civil rights attorneys were to be paid on a par with commercial lawyers. *See* S.Rep. No. 1011, 94th Cong., 2d Sess. 6 (1976), 1976 U.S.Code Cong. & Admin.News p. 5908, 5913 ("It is intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases[,] and not be reduced

because the rights involved may be nonpecuniary in nature.") Regrettably, this has not proved to be true. Indeed, if upon completion of law school, plaintiffs' attorneys chosen to devote themselves to commercial rather than public interest law, they would today, in light of their abilities, be able to command a substantially higher hourly rate.

**1554**

*Johnson,* 488 F.2d at 718. There is no evidence to support this factor.

*Contingency.* Plaintiffs have not sought an enhancement based on contingency.

*Undesirability of the Case:* In general, civil rights litigation is seen "as very undesirable because it stigmatizes an attorney as a 'civil rights lawyer' and thus tends to deter fee-paying clients, particularly high-paying commercial clients, from seeking assistance from that lawyer." *Stokes v. City of Montgomery,* 706 F.Supp. 811, 815 (M.D.Ala.1988), aff'd, 891 F.2d 905 (11th Cir.1989) (table).[4] The results of such litigation tend to arouse the emotions of all concerned, and frequently the attorneys who bring these cases are the subjects of prolonged and vitriolic hostility.

*Nature and Length of Relationship with Client.* Blacksher and Still have represented the plaintiffs in this matter from its inception. There is no evidence that they had a prior professional relationship with the plaintiffs, except to the extent that they have represented the plaintiffs in all these *Dillard* cases.

*Awards in Similar Cases:* Blacksher and Still were awarded $350 an hour in another voting rights case. *Lawrence v. City of Talladega,* civil action no. 91–C–1340–M, 1993 WL 739666 (N.D.Ala. May 17, 1993).

The court is of the opinion, based on these criteria, that the prevailing market rate for non-contingent work performed by attorneys of similar knowledge and experience in similar cases is at least $290 an hour.[5]

### C. Lodestar Calculation

The unadjusted lodestar for an attorney consists, as stated, of the product of the attorney's compensable hours multiplied by his prevailing market fee. The lodestars for plaintiffs' counsel are therefore as follows:

| | | |
|---|---|---|
| Blacksher | 18.5 hours × $290 = | $5,394 |
| Still | 4.4 hours × $290 = | 1,276 |
| Total | | $6,670 |

### D. Adjustment

An adjustment neither upward nor downward is warranted.

### III.

 Plaintiffs' counsel also seek an award of $463.45 for certain expenses. With the exception of routine overhead office normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988 and the standard of reasonableness is to be given a liberal interpretation. *Loranger v. Stierheim,* 3 F.3d 356 (11th Cir.1993); *NAACP v. City of Evergreen,* 812 F.2d 1332, 1337 (11th Cir. 1987). Expenses claimed in this matter include costs for a demographer, long distance calls, and travel. All of these expenses appear to be reasonable and necessary. The court therefore determines that plaintiffs' counsel may recover all the expenses requested.

It is therefore the ORDER, JUDGMENT, and DECREE of the court that the plaintiffs' motion for award of attorney's fees, filed September 1, 1993, is granted, and that the plaintiffs have and recover from defendant City of Elba the sum of $6,670.00 as attorney's fees and $463.45 for expenses, for a total sum of $7,133.45.

---

**4.** *See also Robinson v. Alabama State Department of Education,* 727 F.Supp. 1422 (M.D.Ala.1989), aff'd 918 F.2d 183 (11th Cir.1990) (table); *Hidle v. Geneva County Board of Education,* 681 F.Supp. 752, 756 (M.D.Ala.1988); *York v. Alabama State Board of Education,* 631 F.Supp. 78, 85 (M.D.Ala.1986).

**5.** By establishing the appropriate market rate on the basis of current rates, the court is also compensating plaintiffs' counsel for the delay in payment. *See Missouri v. Jenkins,* 491 U.S. 274,

284, 109 S.Ct. 2463, 2469, 105 L.Ed.2d 229 (1989) ("an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise—is within the contemplation of the statute"); *Norman,* 836 F.2d at 1302 ("[i]n this circuit, where there is a delay the court should take into account the time value of money and the effects of inflation and generally award compensation at current rates rather than at historic rates").