Earl K. **MALLORY, Plaintiff,**

v.

John F. **HARKNESS, Jr.,**
**et al., Defendants.**

**No. 95–8319–CIV.**

United States District Court,
S.D. Florida.

March 12, 1996.

1548

Steven Jay Wisotsky, Fort Lauderdale, FL, for plaintiff.

Barry Scott Richard, Tallahassee, FL, for defendants.

George L. Waas, Asst. Atty. Gen., Tallahassee, FL, for defendant-intervenor Attorney General of State of Florida.

### ORDER AWARDING PLAINTIFF COSTS AND FEES

RYSKAMP, District Judge.

THIS CAUSE comes before the Court upon (1) Plaintiff Earl K. Mallory's Verified Motion For Costs and Fees Pursuant to 42 U.S.C. section 1988 [DE 19], dated July 31, 1995, (2) Plaintiff's Motion for Entry of Default on Plaintiff's Section 1988 Motion as to

all Nonresponding Defendants [DE 24], dated August 22, 1995, (3) Plaintiff's Supplemental Motion for Fees Pursuant to 42 U.S.C. section 1988 [DE 28], dated August 31, 1995, and (4) Plaintiff's Renewed Motion for Costs and Fees [DE 41], dated January 10, 1995. The Defendants and the Attorney General of Florida have responded opposing Plaintiff's motions and the Plaintiff has replied in support. These matters are ripe for adjudication.

## I. BACKGROUND

The Plaintiff, Earl K. Mallory, originally brought suit seeking both a declaratory judgment that Florida Statute § 43.29(1)(a) is unconstitutional and a permanent injunction barring its enforcement. In that action, the Plaintiff named as Defendants John F. Harkness, as Executive Director of the Florida Bar, William F. Blews, as President of the Florida Bar, and the Florida Bar Board of Governors. The named Defendants declined to defend the challenged statute and, as a result, the Attorney General of Florida and the National Bar Association intervened. Ultimately, the Court found that the race and gender-based quota established by Florida Statute § 43.29(1)(a) violated the Fourteenth Amendment to the Federal Constitution and granted Plaintiff all the relief he sought. The Plaintiff has now moved for costs and fees.

The underlying action arose when Plaintiff applied for the sole vacancy on the Judicial Nominating Commission ("JNC") for Florida's Fourth District Court of Appeal. He received a letter stating that his application could not be considered because of his gender and non-minority status. Florida Statute § 43.29 governs the composition of the JNC and was amended in October 1991 to provide that one third of all JNC seats must be occupied by either a woman or a member of a racial or ethnic minority group. At the time the Plaintiff applied for a seat on the JNC, the open position had to be filled by a woman or a minority to comply with § 43.29(1). The Plaintiff commenced this action on May 23, 1995, seeking an emergency preliminary injunction to prevent The Florida Bar Board of Governors from filling the

vacancy as scheduled at its meeting on May 26, 1995.

On May 24, 1995, U.S. District Court Judge Daniel T. Hurley, serving as emergency duty judge, issued an Order to Show Cause why a temporary restraining order should not issue and scheduled the matter for a hearing on May 25. At the hearing, counsel for The Florida Bar announced that the Bar would not defend the challenged statute. The Attorney General, having been duly served pursuant to Local Rule 24.1 B and having received notice of the Order to Show Cause Hearing, did not appear. Consequently, Judge Hurley granted Plaintiff's Motion for a Temporary Restraining Order enjoining Defendants from filling the sole vacancy on the JNC for the Fourth District Court. Thereafter, this Court set the matter for a hearing on Plaintiff's Motion for Preliminary Injunction, and the parties were heard on June 8, 1995.

On June 2, 1995 the Florida Attorney General filed a Motion to Intervene as well as a Response in Opposition to Plaintiff's Motion for Preliminary Injunction. The motion to intervene was based on § 86.091, Fla.Stat. which requires the Attorney General to be served and heard when a statute's constitutionality is challenged. The Court granted the Attorney General's motion to intervene on June 9, 1995.

The Florida Bar, the Board of Governors, the Bar President, and the Bar Executive Director filed an Answer disavowing any interest in defending the statute on June 7, 1995.

At the June 8 hearing, H.T. Smith, President of the National Bar Association, appeared and filed a Motion to Intervene on behalf of the Florida Chapter of the National Bar Association. The Court granted his Motion and permitted him to present argument. The Court also granted his request for ten days to submit a written response to the lawsuit. On June 19, 1995, the Florida Chapter of the National Bar Association filed a Memorandum of Law on the Interpretation of Fla.Stat. § 43.29 defending the statute's constitutionality.

On July 7, 1995, the Court held that the quota established by § 43.29(1) violated the Fourteenth Amendment and permanently enjoined its enforcement. The Plaintiff thus completely prevailed in this matter.

## II. DISCUSSION

The Plaintiff has filed a number of motions relating to attorney's fees and costs: (1) Plaintiff Earl K. Mallory's Verified Motion For Costs and Fees Pursuant to 42 U.S.C. section 1988, (2) Plaintiff's Motion for Entry of Default on Plaintiff's Section 1988 Motion as to all Nonresponding Defendants, (3) Plaintiff's Supplemental Motion for Fees Pursuant to 42 U.S.C. section 1988, and (4) Plaintiff's Renewed Motion for Costs and Fees. The Court will resolve each of these motions in turn.

### A. PLAINTIFF'S MOTION FOR COSTS AND FEES PURSUANT TO 42 U.S.C. SECTION 1988.

#### 1. *Attorney's Fees.*

■ The Plaintiff seeks attorney's fees under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 from the Florida Bar and the State of Florida.[1] This statute provides that in federal civil rights actions "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." By awarding attorney's fees to prevailing parties, this fee shifting statute encourages plaintiffs to bring civil rights suits. Congress intended § 1988 to prompt plaintiffs to act as citizen enforcers or "private attorneys general" advancing our nation's civil rights objectives and vindicating the liberty of all citizens. *Hensley v. Eckerhart,* 461 U.S. 424, 445, 103 S.Ct. 1933, 1945, 76 L.Ed.2d 40 (1983) (Brennan, J., concurring in part and dissenting in part).

■ Where fee-shifting statutes like 42 U.S.C. § 1988 apply, prevailing plaintiffs ordinarily recover attorney's fees unless awarding fees would work an injustice under the circumstances. *Newman v. Piggie Park En-*terprises, Inc., 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). "A court's discretion to deny such fees is ... 'exceedingly narrow.' " *Solomon v. City of Gainesville,* 796 F.2d 1464, 1466 (11th Cir.1986). "Indeed absent special circumstances that would render an award unjust, a prevailing plaintiff under section 1988 should be awarded fees 'as a matter of course.' " *Id.*

■ Thus, under ordinary circumstances, prevailing party plaintiffs within the context of § 1988 should receive an award for attorney's fees. *Id.* The Supreme Court has stated that "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (quoting, *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978)). There is no dispute in this case that Mallory is a prevailing plaintiff. He brought suit to have Florida Statute § 43.29(1) declared unconstitutional and to procure a permanent injunction barring its enforcement and was awarded both.

■ Having found Plaintiff entitled to reasonable attorney's fees as a prevailing plaintiff, the Court must now determine what entities are liable for those fees and to what extent. In general, losing Title VII defendants are held presumptively liable for attorney's fees. *Christiansburg Garment v. E.E.O.C.,* 434 U.S. 412, 418, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978). The Bar Defendants argue that their affirmative refusal to defend the unconstitutional statute presents a unique situation weighing against the presumption of fee liability.

#### a. The Bar Defendants' Liability for Attorney's Fees.

■ The Bar Defendants concede that acting as the enforcement authority of an unconstitutional statute exposes them to some liability for attorney's fees under 42 U.S.C.

---

**1.** The Plaintiff has not moved for an award of costs and fees against the Florida Chapter of the National Bar Association.

§ 1988.[2] The Court agrees that under § 1988 the governmental entity charged with administering an offending statute exposes itself to liability for attorney's fees and costs under § 1988. *Supreme Court of Virginia v. Consumers Union of the United States, Inc.,* 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980); *Council for Periodical Distrib. Assoc. v. Evans,* 827 F.2d 1483 (11th Cir.1987); *Grendel's Den, Inc. v. Larkin,* 749 F.2d 945 (1st Cir.1984); *In re Kansas Congressional Districts Reapportionment Cases,* 745 F.2d 610 (10th Cir.1984).

■ The Bar Defendants, however, maintain that to the extent fees are awarded against them, the award should be nominal due to their lack of culpability and attempt to minimize the litigation. The Bar contends that it had no input in enacting the unconstitutional statute and no responsibility with respect to implementing the provision. In addition, the Bar points out that it did nothing to increase the amount of litigation necessary for the Plaintiff to succeed in having the offending statute declared unconstitutional by refusing to defend the suit.

The Court finds the Bar Defendants' arguments well taken. The State and the Attorney General were primarily responsible for violating Plaintiff's civil rights. Assessing significant attorney's fees against the Bar Defendants in this case would thus not serve the purposes of § 1988. The Court notes, however, that the Bar Defendants are not free of liability in this matter.

The Bar Defendants willingly enforced the unconstitutional statute, thus directly violating the Plaintiff's civil rights. Under these circumstances, fee apportionment is appropriate. *Council for Periodical Distributors Assoc. v. Evans,* 827 F.2d 1483 (11th Cir. 1987). In *Evans,* the Eleventh Circuit noted that where multiple parties are responsible for varying degrees of violating a plaintiff's constitutional rights, apportioning the fee award would be appropriate. *Id. See also, Jose P. v. Ambach,* 669 F.2d 865, 871 (2d Cir.1982). The *Evans* Court directed lower courts to assess the relative culpability of the offending parties in apportioning fees. *Id.*

The Court finds that the Bar Defendants should bear responsibility for 40% of Plaintiff's attorney's fees and costs incurred in successfully obtaining the relief sought in this suit.

### b. Attorneys Fees Awarded Against Intervenors.

■ With respect to intervenors, courts have begun requiring a finding of wrongdoing on the part of the party made to pay attorney's fees. *Independent Federation of Flight Attendants v. Zipes,* 491 U.S. 754, 109 S.Ct. 2732, 105 L.Ed.2d 639 (1989); *Lee v. Chambers County Bd. of Educ.,* 859 F.Supp. 1470, 1472 (M.D.Ala.1994). These courts factor the fault of the fee paying party into the decision to award fees and require a connection between the party liable for the civil rights violation and the party liable for attorney's fees. The Attorney General argues that as an intervenor, the state should not be liable for attorney's fees.

As noted, the Attorney General of the State of Florida ("AG") intervened to defend the constitutionality of the challenged statute under § 86.091, Fla.Stat., and 28 U.S.C. § 2403(b). The AG moved to intervene and responded in opposition to Plaintiff's motion for preliminary injunction. Yet, the AG claims that as a mere intervenor, the State cannot be held liable for attorney's fees under 42 U.S.C. § 1988. The AG relies on *Independent Federation of Flight Attendants v. Zipes,* 491 U.S. 754, 109 S.Ct. 2732, 105 L.Ed.2d 639 (1989) for the proposition that Title VII attorney's fees cannot be awarded against a losing intervenor. The Court finds the AG's reading of *Zipes* to be over broad.

In *Zipes,* the Supreme Court held that an innocent intervenor who did not violate the prevailing party's civil rights should be made to pay attorney's fees only if the intervention was frivolous, unreasonable, or without foundation.[3] In that Title VII sex discrimination

---

**2.** *See,* The Florida Bar's Second Supplemental Memorandum on Attorneys' Fees, filed February 21, 1996.

**3.** In *Zipes,* the Supreme Court was addressing the award of fees under Title VII of the Civil Rights Act of 1964, as amended. 42 U.S.C.A. §§ 2000e through 2000e–17. However, in the

case, the Independent Federation of Flight Attendants (IFFA) intervened in the later stages of the litigation to oppose a settlement agreement reached between TWA and the flight attendants' union. The IFFA intervened to defend the collective bargaining contract rights of employees affected by the settlement but whose rights neither party in interest had any reason to protect. The IFFA was unsuccessful and the plaintiff moved for attorney's fees against it as a losing intervenor.

■ The *Zipes* Court concluded that making blameless intervenors liable for attorney's fees simply did not further the purposes behind fee shifting statutes. 491 U.S. at 761, 109 S.Ct. at 2736–37. Thus, *Zipes* appears to establish the following rule: where a losing intervenor is "innocent," attorney's fees will not be awarded against that intervenor unless the intervention was frivolous, unreasonable, or without foundation.[4]

The intervenor in *Zipes*, however, substantially differs from the AG in the case at hand. In *Zipes*, the intervenor entered the case late in the litigation to defend the rights of a third party to the litigation. In contrast, the AG entered the case early in the proceedings and vigorously defended the constitutionality of the statute throughout the entire proceeding. It appears to the Court that the AG took all steps ordinarily taken by a defendant and, in fact, acted as the defendant in this case. Given these facts, characterizing the AG as an "innocent" or "blameless" intervenor would be inaccurate. The AG in the present case clearly played a pivotal role in the litigation.

■ The AG defended the unconstitutional statute voluntarily and in doing so attempted to aid in the offending statute's enforcement. The AG intervened in this matter pursuant to Florida Statute § 86.091 which states that the AG "shall be served with a copy of the complaint and be entitled to be heard" in any proceeding concerning

the constitutionality of a Florida statute. *Id.* The AG argues that § 86.091 imposes a statutory duty upon the state to defend all constitutionally challenged statutes. The Court, to the contrary, finds intervention by the AG under § 86.091 to be discretionary. It has long been recognized that the AG is not a necessary party each time the constitutionality of a statute is drawn into question. *Watson v. Claughton,* 160 Fla. 217, 34 So.2d 243 (1948). The AG is thus not affirmatively required to intervene every time an entity challenges the constitutionality of a statute. *Rosenfeld v. Lu,* 766 F.Supp. 1131, 1133–34 (S.D.Fla.1991). Upon receipt of the complaint pursuant to § 86.091, the AG could have filed with the Court a notice of acknowledgment declining to defend the statute as the AG did in *Rosenfeld.* The AG in this case, thus, made an affirmative decision to defend an unconstitutional statute.

In addition, the AG, acting as a representative of the state, cannot be "innocent" in terms of violating the Plaintiff's civil rights. The state enacted, enforced, and defended the unconstitutional statute. The state should not be allowed to require the Florida Bar to enforce an unconstitutional statute, defend that statute on the merits as an intervenor in federal court, and then attempt to use its intervenor status to escape liability for attorney's fees. Allowing such a loophole violates the policy behind 42 U.S.C. § 1988.

Based on the above analysis, the Court finds the AG liable for attorneys fees under 42 U.S.C. § 1988. The AG will bear responsibility for 60% of the total awarded attorney's fees and costs.

**c. Substantial Reductions Required by *Texas State Teachers Association.***

■ The AG argues that to the extent Mallory is entitled to an award of attorney's fees, the amount requested must be substantially reduced in accordance with *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,*

course of its decision, the Court noted that § 1988 should be interpreted in the same manner. 491 U.S. at 759 n. 2, 109 S.Ct. at 2735 n. 2.

**4.** The Florida Chapter of the National Bar Association intervened in this case to submit a single memorandum of law interpreting Florida Statute

§ 43.29. Although not at issue in this case, The National Bar Association is an example of an innocent intervenor not liable for attorney's fees under 42 U.S.C. § 1988 in accordance with the *Zipes* ruling.

489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989). As the AG reads *Garland*, the Plaintiff cannot recover fees for time devoted to the unsuccessful First Amendment claim. The AG proposes a 15% reduction in the fee award to reflect the relative volume of paperwork associated with the First Amendment claim.

In *Garland*, the Supreme Court formulated the statutory threshold for determining whether a plaintiff has sufficiently prevailed in a civil rights action to become eligible for an award of attorney's fees under 42 U.S.C. § 1988. The AG's interpretation of *Garland* as limiting attorney's fees where plaintiffs fail to prevail on every litigated point misrepresents the issue addressed in that case.

The *Garland* Court referred to *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) as the source for determining the amount of fees to award prevailing plaintiffs where the plaintiff has achieved only partial success. *Garland*, 489 U.S., at 792, 109 S.Ct. at 1493–94. The *Garland* Court noted that where plaintiff's claims arise out of a common core of facts, and involve related legal theories, "the most critical factor in determining fees is the degree of success obtained." *Garland*, (citing *Hensley*, 461 U.S., at 435, 103 S.Ct., at 1940). The Court also noted that district courts should use their discretion to eliminate hours or reduce awards to account for the limited success of plaintiffs. *Id.*, at 437, 103 S.Ct. at 1941.

Even if the AG derived his fee approach from *Hensley*, his argument for a reduction of fees still fails. The *Hensley* plaintiffs challenged their treatment and the conditions at a forensic hospital as unconstitutional and were successful on five of the six areas challenged. The case at hand presents a different factual situation. Mallory was successful in obtaining all the relief he sought, but failed on an alternative legal theory arising out of the same set of circumstances. When addressing similar facts, the *Hensley* Court concluded:

> Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded

in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised.

*Hensley*, 461 U.S., at 441, 103 S.Ct., at 1943.

 Mallory clearly obtained complete relief but was unsuccessful on a related claim. Where a plaintiff has obtained the result sought, courts should award full attorney's fees and are directed not to reduce fee awards to account for failed contentions raised in the lawsuit. *Hensley*, 461 U.S., at 435, 103 S.Ct. at 1940. "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." *Id.* Accordingly, the Plaintiff's attorney's fees will not be discounted for the losing First Amendment claim.

### d. Arriving at a Reasonable Fee Award.

 *Hensley v. Eckerhart* also sets forth the process a district court should undergo to arrive at a reasonable fee award. The Court advises starting with the lodestar amount obtained by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. 461 U.S. 424, 433–34, 103 S.Ct. 1933, 1939; *see, Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 168 (3d Cir.1973). Once the lodestar amount is ascertained, courts should reduce that amount where hours expended are found to be unreasonable. *Id.* Further, courts are expected to use their knowledge and experience concerning reasonable and proper fees when making fee determinations. *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir.1988).

 The moving party bears the burden of submitting evidence supporting the fee award and "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* The time records should be detailed enough to enable a court to eliminate excessive, redundant, unnecessary, or otherwise unreason-

ably expended hours. *Id.,* at 437, 103 S.Ct., at 1941.

Plaintiff's attorney, Steven Wisotsky, moves for attorney's fees totaling $34,002.50. Mr. Wisotsky contends he spent 112 hours working on the case at a billing rate of $275.00 per hour. The Plaintiff also seeks fees for a certified legal assistant at a rate of $70.00 per hour for 44 hours worked and $35.00 per hour for 3.5 hours worked. In his motion for fees, Plaintiff's attorney goes through the *Johnson* factors to justify the fee total demanded. *See, Johnson v. Georgia Highway Exp., Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974).[5]

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Auth. of City of Montgomery,* 836 F.2d 1292, 1299 (11th Cir.1988). In determining the prevailing market rate, courts typically consider certain factors: the attorney's customary fee, the skill required to perform the legal services, the attorney's experience, reputation and ability, the time constraints involved, preclusion of other employment, contingency, the undesirability of the case, the attorney's relationship to the client, and awards in similar cases. *Dillard v. City of Elba,* 863 F.Supp. 1550, 1552 (M.D.Ala.1993). The AG contends that Mr. Wisotsky's requested hourly rate is excessive.

Considering the relevant *Johnson* factors, the Court hereby finds the $275.00 hourly rate requested for the services of Plaintiff's attorney to be reasonable. In so finding, the Court has considered the prevailing market rate in the legal community for similar services by lawyers of comparable skill, experience, and reputation. *See, Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Plaintiff's counsel, Steven Wisotsky, has been a member of the Florida Bar since 1970 and has extensive experience in § 1983 litigation. Bruce Rogow, a respected attorney in south Florida, submitted an affidavit supporting the hourly rate requested by Mr. Wisotsky. Although the issues presented in this case were not particularly complex, the time constraints involved required an intense amount of work in a limited time period and excluded other employment. In addition, the Court acknowledges the professional and political undesirability of this case. As noted by another Court, civil rights attorneys are often the "subjects of prolonged and vitriolic hostility." *Dillard v. City of Elba,* 863 F.Supp. 1550, 1552 (M.D.Ala.1993). The Court also notes that Mr. Mallory falls into the category of a one time client as opposed to a regular client receiving reduced rates.

Finally, allowing an hourly rate of $275.00 sought by Mr. Wisotsky is not unreasonable given other fee awards in the Eleventh Circuit in general and in the Southern District of Florida in particular. *Dillard v. City of Elba,* 863 F.Supp. 1550, 1552 (M.D.Ala.1993) (awarding $290 per hour); *Knight v. State of Ala.,* 824 F.Supp. 1022, 1027 (N.D.Ala.1993) (awarding $275 per hour); *Cuban Museum of Arts and Culture, Inc. v. City of Miami,* 771 F.Supp. 1190 (S.D.Fla.1991) (awarding $275 per hour). Although the AG argues that the rate sought is excessive, he fails to cite any case law or present any affidavits supporting his position. The Court thus approves an hourly rate of $275 for Mr. Wisotsky and $70 for his legal assistant Harriet Freeman.[6]

---

**5.** In *Johnson,* the Fifth Circuit Court of Appeals adopted a twelve-factor test taken from the American Bar Association Code of Professional Responsibility, Disciplinary Rule 2–106, for determining a reasonable fee award under Section 1988. The trial judge should consider: (1) the time and labor required, (2) the novelty and difficulty of the question involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and the length of the professional relationship with the client, and (12) awards in similar cases. *Johnson,* 488 F.2d at 717–19.

**6.** The AG does not challenge Harriet Freeman's hourly rate as excessive and after considering her experience and the local market the Court finds the rate of $70 per hour reasonable.

The AG does, however, challenge the requested fees on several additional grounds. He argues that the fee award sought should be reduced because: (1) the time listings contain multiple activities and fail to properly indicate the nature of certain tasks, (2) the applicant impermissibly seeks fees for self-education and press releases, (3) the applicant bills for duplicative work and work not related to the litigation, and (4) the applicant seeks compensation for travel time. The Court will address each of the AG's challenges to the fee amount in turn.

### i. Faults with the time listings.

The AG asserts that the Plaintiff has improperly lumped together his time listings precluding the Court from determining the reasonableness of the fees sought. The Court agrees that time records must provide "fairly definite information" concerning the activities performed by the attorney. *FMC Corp. v. Varonos*, 892 F.2d 1308, 1317 (7th Cir.1990). "Counsel should identify the general subject matter of his time expenditures." *Hensley*, 461 U.S. at 437 n. 12, 103 S.Ct. at 1941 n. 12. Where entries fail to specify the subject matter of the activity the court's ability to assess the reasonableness of the charges is hindered. *E.g., Orshan v. Macchiarola*, 629 F.Supp. 1014, 1019 (E.D.N.Y. 1986).

After extensively reviewing Plaintiff's Certification of Time Records of Steve Wisotsky and the Affidavit in Support of Certified Legal Assistant/Law Clerk Fees, the Court finds that the records adequately state the subject matter of the tasks performed in furtherance of the litigation. The Court is able to make a finding concerning the reasonableness of each specified activity and will continue the reasonableness inquiry.

### ii. Self-education and press releases.

The AG argues that the fee award should be reduced for the time Mr. Wisotsky spent gaining familiarity with issues of this case through self-education. The Court acknowledges that the line between research and self-education is quite gray and will not completely disallow hours dedicated to background research as requested by the AG. However, after considering the billing rate requested and the fees related to self-education, the Court has determined that an adjustment is necessary to ensure the fee award is reasonable. The Court finds the need for extensive background research inconsistent with a claim for $275.00 per hour, which presupposes a high degree of expertise in the field. Accordingly, the Court will substitute a billing rate of $200.00 per hour for the billing hours Mr. Wisotsky spent educating himself by reviewing treatises and law review articles.

In addition, the Court finds the preparation of press releases a noncompensable activity. The fee award shall also be reduced to reflect any time spent on press related activities.

### iii. Duplicative work.

The AG argues that Plaintiff is not entitled to fees where both the attorney and the law clerk reviewed the same documents. However, a law clerk and an attorney may work on the same materials without performing duplicative work requiring a reduction in the lodestar amount. *Cuban Museum of Arts and Culture, Inc. v. City of Miami*, 771 F.Supp. 1190, 1192 (S.D.Fla. 1991). In addition, the AG fails to specify what portions of the fee listings he contends are duplicative and why. That the law clerk and the attorney reviewed some of the same materials during the course of the litigation does not compel the Court to find the fees per se unreasonable.

The AG also argues that the fee award should be reduced by 3.4 hours representing the law clerk's attendance at hearings because her presence did not aid in the prosecution of the case. The Court disagrees. Having an assistant present at a hearing to take notes or retrieve documents is not unreasonable. The award will not be reduced. Neither duplication argument put forth by the AG is persuasive.

### iv. Travel time.

The AG finally asserts that fees for travel time should be compensated at a reduced rate and only when work advancing the litigation was performed. The AG relies

on *Watkins v. Fordice,* 807 F.Supp. 406, 413 (S.D.Miss.1992), for this proposition. In contrast, the Plaintiff argues that in the Eleventh Circuit, attorney's fees should fully compensate reasonable travel expenses. *Cuban Museum of Arts and Culture, Inc. v. City of Miami,* 771 F.Supp. 1190, 1192–93 (S.D.Fla. 1991).

Having considered the cases cited by both parties, the Court finds the travel time requested in this case to be compensable at the requested rate of $275 per hour.

### 2. Costs.

On September 12, 1995, the Plaintiff filed a Verified Notice of Receipts for Costs Claimed in support of the earlier August 29, 1995 motion for fees and costs. In the notice of receipts, the Plaintiff moved the Court to award a total $902.65 in costs. The AG filed a response in opposition to Plaintiff's Costs Claim challenging the Plaintiff's listed costs for courier fees, online research, postage, photocopies, facsimiles, long distance, transportation, and service of process.

Title 28 U.S.C. § 1920 specifically defines what costs may be taxed:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursement for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

In interpreting that statute, the Supreme Court has determined that the permissive phrasing grants discretion to district courts to deny taxable costs in favor of the prevailing party, but not to exceed statutorily set maximums. *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987).

Yet, because the Plaintiff has sought attorney's fees under 42 U.S.C. § 1988, the traditional limits of 28 U.S.C. § 1920 do not restrict the recovery of costs. The Eleventh Circuit has held that in civil rights cases reasonable attorney's fees, "must include reasonable expenses because attorneys' fees and expenses are inseparably intertwined as equally vital components of the cost of litigation." *Dowdell v. City of Apopka,* 698 F.2d 1181, 1192 (11th Cir.1983). The *Dowdell* Court approved this Circuit's tradition of liberally reimbursing attorney expenses, holding that "with the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in the case preparation, during the course of litigation ... may be taxed as costs under section 1988." *Id.,* at 1192. Applying the principles of *Dowdell,* the Court will now address each of the AG's objections to the costs requested by the Plaintiff.

To begin, the Court will allow the Plaintiff's requested costs for telephone charges, postage, photocopies, and on-line research as compensable expenses. The low amounts requested and the Plaintiff's pledge that these charges were connected to the prosecution of the case when considered in light of the liberal principals announced in *Dowdell,* lead the Court to find these expenses compensable.

In his response, the AG also objects to the inclusion of courier fees totaling $135.25, service of process fees totaling $394.25, and facsimile charges totaling $78.00 included in the cost award. The Court must review the course of the underlying litigation to assess the reasonableness of these costs. This case was completed within two months of the original filing. To prevent the challenged statute from immediately damaging the Plaintiff, a preliminary injunction was granted at an emergency hearing. The Plaintiff's use of courier services and facsimile directly relate to the accelerated nature of this case. Likewise, expedited service of process was necessary and reasonable to ensure the Defendants were timely served for the emergency hearing. The Court has considered the emergency nature of the pro-

ceedings and the course of the litigation and finds the expenses related to courier fees, expedited service of process, and facsimiles compensable under the circumstances of this case.

Finally, the Court will disallow Plaintiff's transportation costs from Marsh Harbor to West Palm Beach totaling $253.76. The Court is sympathetic to Plaintiff's previously made vacation plans, but finds this a noncompensable expense of litigation.

**B. Plaintiff's Supplemental Motion for Fees Pursuant to 42 U.S.C. section 1988.**

On August 31, 1995 the Plaintiff filed a Supplemental Motion for Fees Pursuant to 42 U.S.C. § 1988 seeking fees for time spent replying to the State's Response in Opposition to Plaintiff's Motion for Fees and Costs. In that motion, the Plaintiff demands a supplemental fee award of $2,200.00 based on a lodestar of 8 hours multiplied by the hourly rate of $275.00. The Plaintiff cites *Jonas v. Stack*, 758 F.2d 567, 568 (11th Cir.1985) in support of the supplemental fee request. In the Eleventh Circuit, a prevailing party's counsel is entitled to reasonable compensation when he litigates his own claim for entitlement to § 1988 fees. *Id.; Johnson v. University College of the University of Alabama in Birmingham,* 706 F.2d 1205, 1207 (11th Cir.1983).

The AG responded in opposition to Plaintiff's motion for supplemental fees. The AG, however, failed to cite any authority disallowing a prevailing plaintiff in a civil rights case an award for attorney's fees for time spent replying in support of its motion for fees and costs. In fact, the AG only reiterated the arguments made in his response. Accordingly, the Plaintiff's Supplemental Motion for Attorney's Fees is hereby granted.

**III. CONCLUSION**

THE COURT has considered the Motion and the pertinent portions of the record, and

being otherwise fully advised in the premises, it is

ORDERED AND ADJUDGED:

(1) Plaintiff Earl K. Mallory's Verified Motion For Costs and Fees Pursuant to 42 U.S.C. section 1988 [DE 19] is hereby GRANTED, but reduced in part to reflect the Court's above findings.

Plaintiff moved for a fee award totaling $34,002.50 based on 112.00 attorney hours billed at a rate of $275.00 per hour, 44 law clerk hours billed at a rate of $70.00 per hour, and 3.5 law clerk hours billed at a rate of $35.00 per hour. This award will be adjusted:

(a) The Court will reduce the Plaintiff's fee request to reflect 5.5 hours devoted to self-education over May 5, May 9, May 17, May 31, and June 7. Those hours will be billed at a rate of $200.00 per hour.

(b) The Court will reduce the hours claimed by Plaintiff's attorney by 3 hours for time devoted to the preparation of press releases on May 18 and May 20.

The Court hereby awards the Plaintiff $32,765.00 in attorneys fees.[7] In addition, the Court hereby awards the Plaintiff $648.89 in costs.[8]

The responsibility for these fees and costs will be apportioned between the Bar Defendants and the Attorney General as noted in the above discussion on a 40% and 60% basis. The total attorney's fees award against the Bar Defendants is **$13,365.56.** The award against the Attorney General is **$20,048.33.**

(2) Plaintiff's Motion for Entry of Default on Plaintiff's Section 1988 Motion as to all Nonresponding Defendants [DE 24] is hereby DENIED.

(3) Plaintiff's Supplemental Motion for Fees Pursuant to 42 U.S.C. section 1988 [DE 28] is hereby GRANTED. The Plaintiff is thus additionally awarded a supplemental fee award of $2,200.00. The Attorney General is solely responsible for these supplemental fees.

---

7. The adjusted award is based on the following calculations: $3,202.50 (total law clerk) + $28,-462.50 (103.50 atty hrs × $275) + $1100.00 (5.5 atty hrs × $200) = $32,765.

8. The Plaintiff sought costs totaling $902.65. The cost award was reduced by $253.76 to reflect disallowed travel costs.

(4) Plaintiff's Renewed Motion for Costs and Fees [DE 41], is hereby DENIED as moot.

DONE AND ORDERED.