**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-1389**

DAVID BRAT; BARBARA COMSTOCK; ROBERT WITTMAN, Congressman;
BOB GOODLATTE, Congressman; RANDY FORBES, Congressman;
MORGAN GRIFFITH, Congressman; SCOTT RIGELL, Congressman; ROBERT
HURT, Congressman,

        Intervenors/Defendants - Appellants,

ERIC CANTOR, Congressman; FRANK R. WOLF, Congressman,

        Intervenors/Defendants,

and

VIRGINIA STATE BOARD OF ELECTIONS; KENNETH CUCCINELLI, II,

        Defendants,

v.

GLORIA PERSONHUBALLAH, an individual; JAMES FARKAS, an individual,

        Plaintiffs - Appellees,

JAMES B. ALCORN; CLARA BELLE WHEELER; SINGLETON B.
MCALLISTER,

        Defendants - Appellees,

and

DAWN CURRY PAGE, an individual,

        Plaintiff.

Appeal from a Three-Judge Panel of the United States District Court for the Eastern District of Virginia, at Richmond. Robert E. Payne, Senior District Judge, Presiding, together with Albert Diaz, Circuit Judge, and Liam O'Grady, District Judge. (3:13-cv-00678-REP-LO-AD)

Argued: December 6, 2017                     Decided: February 26, 2018

Before NIEMEYER, TRAXLER, and KEENAN, Circuit Judges.

Vacated and remanded by published opinion. Judge Niemeyer wrote the opinion, in which Judge Traxler and Judge Keenan joined.

**ARGUED:** Michael A. Carvin, JONES DAY, Washington, D.C., for Appellants. Marc Erik Elias, PERKINS COIE LLP, Washington, D.C., for Appellees Gloria Personhuballah and James Farkas. Trevor Stephen Cox, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees James B. Alcorn, Clara Belle Wheeler, and Singleton B. McAllister. **ON BRIEF:** Anthony J. Dick, JONES DAY, Washington, D.C., for Appellants. Mark R. Herring, Attorney General, Stuart A. Raphael, Solicitor General, Matthew R. McGuire, Assistant Solicitor General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, for Appellees James B. Alcorn, Clara Belle Wheeler, and Singleton B. McAllister. Kevin J. Hamilton, William B. Stafford, Abha Khanna, PERKINS COIE LLP, Seattle, Washington, for Appellees Gloria Personhuballah and James Farkas.

NIEMEYER, Circuit Judge:

The main question presented in this appeal is whether intervening defendants can be required to pay a portion of prevailing plaintiffs' attorneys fees and costs, awarded under 42 U.S.C. § 1988(b) and 52 U.S.C. § 10310(e), when the intervening defendants were not charged with any wrongdoing and could not be held liable for the relief that the plaintiffs sought.

Three Virginia voters commenced this action challenging a state law's delineation of Virginia's Third Congressional District as a racial gerrymander in violation of the Equal Protection Clause of the Fourteenth Amendment. They named as defendants the Virginia State Board of Elections, some members of the Board in their official capacities, and the Attorney General of Virginia (collectively, "the Commonwealth" or "Virginia"). A three-judge district court was convened under 28 U.S.C. § 2284(a) to determine the matter.

Shortly after commencement of the action, eight U.S. Congressmen from Virginia, who neither resided in nor represented the Third District, were granted permission to intervene as defendants to defend the Third District based on their claim that granting relief to the plaintiffs would upset existing congressional district boundaries and constituent relationships and engender confusion among voters. After trial, the court concluded that the Third District was indeed a racial gerrymander.

The Commonwealth determined not to appeal, but the Intervening Congressmen did. On appeal, the Supreme Court remanded the case for consideration of its recent decision in *Alabama Legislative Black Caucus v. Alabama*, 135 S. Ct. 1257 (2015), and

3

the district court, after considering *Alabama*, again concluded that the Third District was a racial gerrymander. Once again, the Commonwealth determined not to appeal, but again the Intervening Congressmen did. The Supreme Court rejected that appeal on the ground that the Intervening Congressmen lacked standing. *Wittman v. Personhuballah*, 136 S. Ct. 1732, 1736 (2016).

On the plaintiffs' motion, the district court awarded the plaintiffs as prevailing parties roughly $1.35 million in attorneys fees and costs and, in a 2-1 opinion, assessed roughly $480,000 of those fees and costs against the Intervening Congressmen based on their independent appeals to the Supreme Court. Senior District Judge Robert Payne dissented, concluding that the Supreme Court's decision in *Independent Federation of Flight Attendants v. Zipes*, 491 U.S. 754 (1989), controlled and precluded the assessment of attorneys fees and costs against intervenors who were "blameless," meaning that they were not charged as wrongdoers and legal relief could not have been obtained from them. From the district court's order assessing attorneys fees and costs against them, the Intervening Congressmen appealed, relying on *Zipes*.

In *Zipes*, the Supreme Court held that an award of attorneys fees under a fee-shifting statute, such as § 1988(b), should be made "against losing intervenors only where the intervenors' action was frivolous, unreasonable, or without foundation." 491 U.S. at 761. Because we conclude that *Zipes* is controlling, we vacate the district court's March 3, 2017 order awarding attorneys fees and costs and remand to the district court for reconsideration of the plaintiffs' petitions for fees in light of this opinion.

4

I

With its enactment of H.B. 251 on January 25, 2012, Virginia redrew its congressional district lines, as it was required to do in response to the 2010 decennial census. Three voters commenced this action under 42 U.S.C. § 1983 against the Commonwealth,[1] challenging as unconstitutional the boundaries of the Third Congressional District, which lies in southwest Virginia and extends from Richmond to Norfolk, including Petersburg. They claimed that under H.B. 251, African Americans were "packed" into the district to remove their votes from neighboring districts and that the decision to do so was "driven primarily by race," in violation of the Equal Protection Clause. For relief, they sought a declaration that the Third District was unconstitutional and an injunction enjoining the Commonwealth from holding elections under the existing map. They also urged the court to take any actions necessary to draw new, constitutionally valid congressional districts.

Shortly after this action was commenced, eight Congressmen representing various congressional districts in Virginia, but not the Third District, filed a motion to intervene as defendants, claiming that they had an interest in the existing 2012 map and that the plaintiffs' request that the map be redrawn "would not only upset existing district

---

[1] Early in the litigation, the Attorney General of Virginia and Board of Elections were dismissed as defendants, leaving as defendants only individual members of the Board. And after the 2014 state elections resulted in the election of new members of the Board, those members were substituted as defendants.

boundaries and constituent relationships but also engender confusion among the voting public." The district court granted their motion.

Following a bench trial, the district court found that the Third District was an unconstitutional racial gerrymander, in violation of the Equal Protection Clause. *Page v. Va. State Bd. of Elections*, 58 F. Supp. 3d 533 (E.D. Va. 2014). In its order, dated October 7, 2014, the court directed that the 2014 congressional elections "proceed as scheduled" under the existing 2012 map given the imminence of those elections, but it enjoined the Commonwealth from holding future elections until a new redistricting plan was adopted. It referred the matter to the Virginia General Assembly to adopt a new redistricting plan "as expeditiously as possible."

Given the factual findings made by the district court, the Commonwealth decided not to appeal the district court's October 7, 2014 order, concluding that the Supreme Court would not likely reverse the decision under the demanding "clear error" standard of review. The Intervening Congressmen, however, did appeal, invoking 28 U.S.C. § 1253.

The Supreme Court vacated the district court's order and remanded the case "for further consideration in light of *Alabama Legislative Black Caucus v. Alabama*." *Cantor v. Personhuballah*, 135 S. Ct. 1699 (2015) (mem.).

On remand, the district court considered *Alabama* and issued a new order, dated June 5, 2015, applying the *Alabama* legal framework and again concluding that the Third

6

District was an unconstitutional racial gerrymander.[2] *Page v. Va. State Bd. of Elections*, 2015 WL 3604029 (E.D. Va. June 5, 2015). The court's order gave the Virginia General Assembly until September 1, 2015, to adopt a redistricting plan. Again, the Commonwealth decided not to appeal, but the Intervening Congressmen did.

While that second appeal was pending, the September 1 deadline passed, and the district court proceeded to address a remedial redistricting plan, soliciting proposed plans from the parties and any interested nonparties. It also appointed a special master to assist it in reviewing the plans and designing a new map. The Intervening Congressmen filed motions to stay this process pending their appeal to the Supreme Court, but both the district court and the Supreme Court denied them. By order dated January 7, 2016, the district court selected for implementation a remedial plan proposed by the special master.

Meanwhile, the Supreme Court expressed doubt that the Intervening Congressmen had standing to challenge the district court's June 5, 2015 order because none of them resided in or represented the Third District. It directed the parties to submit supplemental briefing on the issue. In response, three of the ten Intervening Congressmen claimed that they had standing, and the Commonwealth agreed as to at least one of them. The Commonwealth, nonetheless, requested that the Court affirm the district court's order on the merits. In a unanimous decision, however, the Supreme Court determined that none

---

[2] Following the remand order, the district court allowed two newly elected Congressmen also to intervene as defendants.

of the Intervening Congressmen had standing and dismissed the appeal. *Personhuballah*, 136 S. Ct. at 1736.

Following the district court's original order of October 7, 2014, that found the Third District unconstitutional, the plaintiffs filed two petitions seeking attorneys fees and costs pursuant to 42 U.S.C. § 1988(b) and 52 U.S.C. § 10310(e), and the district court granted the petitions, awarding the plaintiffs $779,189.39 in fees and costs and assessing the award against the Commonwealth. The court, however, stayed enforcement of the award pending completion of the litigation. After the district court entered its second order dated June 5, 2015, again holding the Third District unconstitutional, the plaintiffs filed a third petition for fees incurred litigating in the Supreme Court and on remand. The district court denied that petition without prejudice, allowing the plaintiffs to renew it pending the outcome of the Intervening Congressmen's second appeal to the Supreme Court. Finally, after the Supreme Court dismissed the second appeal, the plaintiffs filed a fourth petition for fees, renewing their prior petition and seeking fees incurred during the second appeal to the Supreme Court and in connection with the development of a remedial redistricting plan. Ruling on all of the plaintiffs' fee petitions in the aggregate, the district court determined, by order dated March 3, 2017, that the plaintiffs were entitled to a total award of $1,346,571.74 in fees and costs, including the initial award of $779,189.39. Of the total $1.35 million award, the court, in a 2-1 decision, assessed $479,887.67 against the Intervening Congressmen, rejecting their argument that *Zipes* precluded such an award against them. The majority found that

8

"much of *Zipes*'s reasoning [was] simply inapplicable to the case at hand." *Personhuballah v. Alcorn*, 239 F. Supp. 3d 929, 939 (E.D. Va. 2017).

From the district court's order awarding attorneys fees and costs, the Intervening Congressmen filed this appeal, contending that the district court misinterpreted *Zipes* and that the assessment of roughly $480,000 in fees and costs against them must be reversed. While the plaintiffs contend that the district court ruled correctly, they argue conditionally that if the assessment of fees against the Intervening Congressmen is reversed, the total award of $1.35 million should be assessed against the Commonwealth. Understandably, the Commonwealth objects to the plaintiffs' suggestion, arguing that it should not be held responsible for any fees incurred by reason of the Intervening Congressmen's actions.

II

After awarding plaintiffs, as prevailing parties, their fees and costs of roughly $1.35 million under 42 U.S.C. § 1988(b) and 52 U.S.C. § 10310(e), the district court assessed the Intervening Congressmen with payment of roughly $480,000 of that amount. The Intervening Congressmen contend that the district court erred because, under *Zipes*, they are not responsible to the plaintiffs for any portion of their attorneys fees inasmuch as the Intervening Congressmen were not alleged to be wrongdoers and the plaintiffs could not have obtained from them the relief requested in the complaint. *See Zipes*, 491 U.S. at 761. Specifically, the Intervening Congressmen direct attention to the categorical rule adopted by *Zipes* that a district court should award "attorney's fees against losing

9

intervenors only where the intervenors' action was frivolous, unreasonable, or without foundation." *Id*.

> The plaintiffs contend:

> [R]esolution of this appeal may be of keen concern to [the Intervening Congressmen] and the [Commonwealth], but it is of little concern to [the plaintiffs]. Regardless of the disposition of this appeal, the Panel awarded [the plaintiffs] a total award of $1,346,571.74. If [the Intervening Congressmen] are not held responsible for a portion of that total award, then [the plaintiffs] are entitled to a full recovery against the [Commonwealth] — who chose not to appeal the overall fee award.

Nonetheless, the plaintiffs argue further that the Intervening Congressmen "had cast themselves as the functional equivalent of a defendant, dramatically run up [the plaintiffs'] fees, and done so not in pursuit of any cognizable legal interest . . . but to stand in the schoolhouse door in a futile attempt to block the remedy of a bald racial gerrymander." They conclude that the Intervening Congressmen, by reason of their action, "were not 'innocent' in the relevant sense" and therefore fell outside the general rule established in *Zipes*.

The Commonwealth contends that the dispute is between the Intervening Congressmen and the plaintiffs "over which of them is responsible for Plaintiffs' fees incurred after [the Commonwealth] stopped defending [the Third District]. The outcome of that dispute does not affect [the Commonwealth's] liability for the fees previously awarded against [it], a judgment that [the Commonwealth] did not appeal and that [the Commonwealth has] already paid and satisfied." Thus, it argues that if *Zipes is* applicable, then the plaintiffs themselves must bear the fees and costs that they incurred in litigating against the Intervening Congressmen. "And if *Zipes* does *not* apply, then

[the Intervening Congressmen] must bear Plaintiffs' fees and costs. In neither case would [the Commonwealth] bear any increased liability."

The principal dispute in this appeal thus turns on whether *Zipes* prohibits an attorneys fees award under § 1988(b) and § 10310(e) against intervening defendants in the circumstances presented.

Under the traditional American rule, the prevailing party in a suit is not entitled to recover reasonable attorneys fees and costs from the losing party. *See Alyeska Pipeline Serv. Co., v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). But Congress has provided exceptions to that rule with certain fee-shifting statutes, such as 42 U.S.C. § 1988(b) and 52 U.S.C. § 10310(e). Section 1988(b) provides as relevant: "In any action or proceeding to enforce a provision of . . . [§] 1983, . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." And § 10310(e) provides similarly: "In any action . . . to enforce the voting guarantees of the [F]ourteenth . . . [A]mendment, the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, reasonable expert fees, and other reasonable litigation expenses as part of the costs." Both provisions leave awards to the discretion of the court, which the Supreme Court noted in *Zipes* has limits, 491 U.S. at 758 ("[I]n a system of laws discretion is rarely without limits"), and the discretion afforded a court in those statutes in particular is subject to the limitation articulated in *Zipes*.

The *Zipes* Court announced a "categorical" rule that "district courts should . . . award Title VII attorney's fees against losing intervenors only where the intervenors' action was frivolous, unreasonable, or without foundation," 491 U.S. at 761, and it noted

that the rule is applicable to similar fee-shifting statutes, such as 42 U.S.C. § 1988, *id.* at

758 n.2 (noting, "the language of § 706(k) is substantially the same as . . . 42 U.S.C.

§ 1988"); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 n.7 (1983) (noting that 42

U.S.C. § 1988 was "patterned upon" § 706(k) of the Civil Rights Act of 1964 (which was

the provision addressed in *Zipes*)).  The *Zipes* rule is grounded on the policy goals of fee-

shifting statutes generally — (1) that by having the "wrongdoers pay," the incentives

under statutes containing a fee-shifting provision "will not be reduced by the prospect of

attorney's fees that consume the recovery," and (2) that would-be wrongdoers will be

deterred.  *Zipes*, 491 U.S. at 761–62.  The Court explained further that "[a]ssessing fees

against blameless intervenors" — that is, those who "have not been found to have

violated anyone's civil rights" — "is not essential" to the purposes of fee shifting.  *Id.*  As

the Court summarized:

> Awarding attorney's fees against such . . . intervenor[s] would further
> neither the general policy that wrongdoers make whole those whom they
> have injured nor Title VII's aim of deterring employers from engaging in
> discriminatory practices.

*Id.* at 762.

Under the categorical rule announced in *Zipes*, it is apparent that the Intervening

Congressmen in this case were "blameless" intervenors (*i.e.*, persons not charged with

violating the law) and therefore should not have been assessed attorneys fees under the

fee-shifting statutes in question.  *See Zipes*, 491 U.S. 762 (emphasizing the "crucial

connection between liability for violation of federal law and liability for attorney's fees

under federal fee-shifting statutes").  The plaintiffs sued *the Commonwealth* for enacting

12

an unconstitutional law — namely, H.B. 251 — delineating Virginia's congressional districts, including the Third District, and they sought relief *against the Commonwealth*, the only party from whom they could obtain relief. The Intervening Congressmen, on the other hand, were not alleged to have carried out the unconstitutional delineation of congressional districts — they were federal representatives who were not charged with any responsibility in the enactment of the state law. Moreover, the relief that the plaintiffs sought could not have been obtained from the Intervening Congressmen, who were legally unaffiliated with the government of the Commonwealth and therefore incapable of adopting a new redistricting plan, as the plaintiffs requested. Accordingly, the Intervening Congressmen were not responsible for the plaintiffs' fees. As the Supreme Court aptly noted:

> [T]he party legally responsible for relief on the merits . . . is the party who must pay the costs of litigation . . . and it is clearly the party who should also bear fee liability under § 1988.

*Zipes*, 491 U.S. at 763 (second omission in original) (quoting *Kentucky v. Graham*, 473 U.S. 159, 164 (1985)).

Moreover, even though the Intervening Congressmen defended the Commonwealth's 2012 law and presented the same arguments as the Commonwealth in doing so — a fact important to the district court — that fact does not mean that "the two must be treated alike for purposes of fee assessments." *Zipes*, 491 U.S. at 765. As *Zipes* made clear, that defendants and intervening defendants make the same arguments in an attempt to defeat plaintiffs' positions does not control the award of fees. *Id.* As such, the

13

Intervening Congressmen, in pursuing their own independent interests, were "blameless" of the liability asserted by the plaintiffs against the Commonwealth.

For these reasons and because no party contends that the Intervening Congressmen's actions were frivolous, unreasonable, or without foundation, the Intervening Congressmen should not, under *Zipes*, have been assessed with payment of any of the attorneys fees and costs awarded to the plaintiffs.

In concluding otherwise, the district court created a construct of *Zipes* that is simply not justified, either by its holding or its reasoning. The district court in essence collapsed the status and purpose of the Congressmen as intervenors with the status of the Commonwealth as defendant, overlooking (1) that the U.S. Congressmen did not enact the unconstitutional state law; (2) that 42 U.S.C. § 1983 and the Equal Protection Clause could not provide the plaintiffs relief against the Intervening Congressmen for creating an unconstitutional congressional district; and (3) that the Intervening Congressmen intervened to protect their own distinct interests in constituent relationships. In this manner, the court failed to recognize that the Intervening Congressmen could not incur liability simply because they intervened and defended the law.

Turning in particular to the district court's reasoning, the court stated that the Intervening Congressmen "had the ability to grant Plaintiffs' relief *on the merits* by simply dropping [their] defense," *Personhuballah*, 239 F. Supp. 3d at 940 (emphasis in original), and that "[w]hen they failed to do so, 'blame,' as *Zipes* defined it, could only lie with [the Intervening Congressmen], *who fully and willingly defended the law*," *id*. at 241 (emphasis added). This is a curious proposition — that by defending a practice or a law,

14

intervenors thereby become wrongdoers responsible for that practice or law. More importantly, this clearly misses the point of *Zipes*, which applied its categorical rule to intervenors who were "blameless" under Title VII — *i.e.*, intervenors who had not been found to have committed wrongdoing under the relevant statute. The Intervening Congressmen in this case were indeed blameless, as they were never accused of enacting or enforcing an unconstitutional law, nor were they found to have violated § 1983 and the Equal Protection Clause, under which the plaintiffs brought their action against the Commonwealth.

> In every lawsuit in which there is a prevailing Title VII plaintiff there will also be a losing defendant who has committed a legal wrong. That defendant will . . . be liable for all of the fees expended by the plaintiff in litigating the claim against him, and that liability alone creates a substantial added incentive for victims of Title VII violations to sue.

*Zipes*, 491 U.S. at 761. Clearly, simply engaging in the act of litigating and taking a position opposed to the plaintiffs are not violations of § 1983 and the Constitution so as to justify a fee award.

Nonetheless, the district court pressed further, concluding that the Intervening Congressmen were liable for attorneys fees based on a principle that "when intervenors *functionally replace* the original defendants *in the defense* of an unconstitutional law, they may be held liable for attorney's fees." *Personhuballah*, 239 F. Supp. 3d at 942 (emphasis added). This proposition, however, lacks any support from *Zipes*, which did not focus on who *was defending* a law, but rather on who *was liable* under the law — *i.e.*, "legally responsible for relief on the merits," 491 U.S. at 763 (quoting *Graham*, 437 U.S. at 164). Continuing this argument in another form, the district court reasoned that

15

because the Intervening Congressmen advanced the same arguments and sought to obtain the same results as the Commonwealth, they were "functionally" defendants who could therefore not seek the benefit of the *Zipes* holding. But *Zipes* rejected *this precise argument*, explaining,

> Of course, an intervenor may sometimes raise an argument that brings into question not merely the appropriateness of the remedy but the plaintiff's very entitlement to relief. Here, for example, petitioner advanced one argument that would have prevented the District Court's approval of any relief for Subclass B respondents. But that an intervenor can advance the same argument as a defendant does not mean that the two must be treated alike for purposes of fee assessments.

*Zipes*, 491 U.S. at 765. It is not the parallel advancement of positions that determines whether the *Zipes* principle applies; it is whether the intervenors are wrongdoers from whom plaintiffs could obtain relief. In the end, Congress shifted attorneys fees to wrongdoers under 42 U.S.C. § 1988 and 52 U.S.C. § 10310 to give effect to its policy of having those wrongdoers make the victim whole, including the payment of his attorneys fees, and of deterring other would-be wrongdoers from violating the law. *Id*. Consistent with this policy objective, "section 1988 simply does not create fee liability where merits liability is nonexistent." *Graham*, 473 U.S. at 168.

Finally, the district court concluded that the Intervening Congressmen were not blameless because they somehow were responsible "as representatives of the sovereign will of the Commonwealth." *Personhuballah*, 239 F. Supp. 3d at 941. More fully, the court stated, "[T]he defendants, whether they were the Attorney General, the individuals on the Board of Elections, *or the intervening Representatives*, were . . . 'liable' in their capacity as representatives of the sovereign will of the Commonwealth," *id*. (emphasis

16

added), because as the "sole defenders" of H.B. 251, the Intervening Congressmen were "capable of fully granting Plaintiffs' relief on the merits, and they therefore assumed the risk of being 'liable on the merits' for the unconstitutional borders of the District as well," *id*. at 942. With this proposition that the Intervening Congressmen were representatives of the "will of the Commonwealth," the district court proceeded to step around the clear principle that U.S. Congressmen, who neither enact nor enforce a state law, cannot be held liable for a law's defect merely because they defend it. This is simply a twist on the court's unsupported proposition that engaging in the litigation as intervenors in opposition to the plaintiffs somehow violates § 1983 and the Constitution.

In reaching its construction of *Zipes*, the district court relied mainly on two cases, both of which are materially distinguishable because the intervening defendants in those cases were, as state actors, defending the challenged statute on behalf of the State. *See Planned Parenthood of Cent. N.J. v. Att'y Gen. of N.J.*, 297 F.3d 253, 263–65 (3d Cir. 2002) (declining to apply *Zipes* where the New Jersey legislature intervened to defend the constitutionality of a statute *that it enacted* when the New Jersey Attorney General declined to do so); *Mallory v. Harkness*, 923 F. Supp. 1546, 1552–53 (S.D. Fla. 1996), *aff'd*, 109 F.3d 771 (11th Cir. 1997) (per curiam) (distinguishing *Zipes* in a case where Florida's Attorney General intervened to defend a Florida law imposing minority quotas on appointees to the State's judicial nominating commission where officials of the state bar association refused to defend it). Thus, *in both cases, the intervening party was a representative of the State responsible for enacting or enforcing the challenged statute*, not an independent third party who could not be charged with liability. We agree with

17

Judge Payne's dissenting opinion below that these cases "stand for the common-sense principle that, where an unconstitutional statute is involved, the 'blameworthy' party under *Zipes* is the state that enacted the statute." *Personhuballah*, 239 F. Supp. 3d at 961 (Payne, J., dissenting).

At bottom, we disagree with the district court and find no grounds in *Zipes*, or elsewhere, for not applying its categorical rule. Since no party has suggested that the Intervening Congressmen have acted frivolously, unreasonably, or without foundation, we conclude that they cannot be held liable for any of the plaintiffs' attorneys fees or costs under either 42 U.S.C. § 1988(b) or 52 U.S.C. § 10310(e).

## III

The plaintiffs argue that regardless of how we rule, they are, as prevailing plaintiffs, entitled to the full $1.35 million amount awarded by the district court, and if the Intervening Congressmen are not held to pay a portion, then the Commonwealth should pay the entire amount. The Commonwealth, on the other hand, argues that they are not responsible for any amount attributable to the Intervening Congressmen's actions, and that if the Intervening Congressmen are not held to pay a portion of the award, the plaintiffs should bear that portion under the default American rule that each party bears its own attorneys fees.

Our decision in *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169 (4th Cir. 1994), is instructive on this issue. In *Rum Creek*, we stated, "Under the Supreme Court decision in *Zipes*, we are required to hold that *the intervention-related fees and expenses*

18

in question here are not recoverable under 42 U.S.C. § 1988 by a prevailing plaintiff against a losing defendant." *Id*. at 178 (emphasis added). Specifically at issue in *Rum Creek* were fees incurred by the plaintiff in opposing the *entry* of the intervenor-defendants into the action. But we see no reason not to apply that holding also to the intervention-related fees incurred *in actually litigating* against the intervenors' positions. Indeed, the language in *Zipes* supports this conclusion. *See Zipes*, 491 U.S. at 761 (noting that, under its categorical rule, the defendant will "be liable for all of the fees expended by the plaintiff in litigating the claim *against him*," *i.e.*, the defendant only (emphasis added)); *see also id.* at 767 (Blackmun, J., concurring in the judgment) (noting that the majority "tacitly assumes that the defendant's fee liability goes no further" than fees incurred litigating *against him*).

Accordingly, we conclude that the Commonwealth cannot be held liable for attorneys fees and costs incurred by the plaintiffs in litigating against the entry of the Intervening Congressmen or against the Intervening Congressmen's positions. Under the traditional American rule, the plaintiffs must bear those intervention-related fees.

We therefore vacate the district court's order of March 3, 2017, awarding attorneys fees and costs for reconsideration of the plaintiffs' petitions in light of this opinion. On remand, the district court should award the plaintiffs attorneys fees and costs only in an amount for which the court, in its discretion, finds the Commonwealth to be responsible under 42 U.S.C. § 1988(b) and 52 U.S.C. § 10310(e).

VACATED AND REMANDED