RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 25a0124p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

DONALD FREED,

      *Plaintiff-Appellant/Cross-Appellee* (24-1170/1197),

      *Plaintiff-Appellant/Cross-Appellee* (24-1170/1251),


      *v.*

MICHELLE THOMAS,

                  *Defendant,*

GRATIOT COUNTY, MICHIGAN,

      *Defendant-Appellee/Cross-Appellant* (24-1170/1197),

MICHIGAN DEPARTMENT OF ATTORNEY GENERAL,

      *Intervenor-Appellee/Cross-Appellant* (24-1170/1251).

> Nos. 24-1170/1197/1251

Appeal from the United States District Court for the Eastern District of Michigan at Bay City.
No. 1:17-cv-13519—Bernard A. Friedman, District Judge.

Argued: March 18, 2025

Decided and Filed: May 12, 2025

Before: BATCHELDER, LARSEN, and RITZ, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Philip Lee Ellison, OUTSIDE LEGAL COUNSEL PLC, Hemlock, Michigan, for Donald Freed. Douglas J. Curlew, CUMMINGS, MCCLOREY, DAVIS & ACHO, P.L.C., Livonia, Michigan, for Gratiot County. Matthew B. Hodges, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Michigan Department of Attorney General. **ON BRIEF:** Philip Lee Ellison, OUTSIDE LEGAL COUNSEL PLC, Hemlock, Michigan, for Donald Freed. Douglas J. Curlew, CUMMINGS, MCCLOREY, DAVIS & ACHO, P.L.C.,

Livonia, Michigan, for Gratiot County.  Matthew B. Hodges, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Michigan Department of Attorney General.

_____

**OPINION**

_____

RITZ, Circuit Judge.  Donald Freed, Gratiot County, and the state of Michigan appeal the district court's order awarding Freed attorneys' fees.  We affirm the court's determination that Gratiot County and Michigan are liable for attorneys' fees.  But for the following reasons, we vacate the court's fee calculation and remand for further proceedings.

I.

This case is almost seven years old, and Freed's current appeal is his third before this court.

A.

In 2017, Gratiot County foreclosed on Donald Freed's home because he did not pay his taxes.  Freed's property was worth $98,800.  At the time of foreclosure, Michigan's General Property Tax Act (GPTA) did not require that "foreclosing governmental unit[s]" return the surplus proceeds from a foreclosure sale to the property owner.  *Rafaeli, LLC v. Oakland Cnty.*, 952 N.W.2d 434, 446 (Mich. 2020).  So even though Freed owed just under $1,110, the county sold his property for $42,000 and kept everything.

Freed sued Gratiot County and its treasurer Michelle Thomas under 42 U.S.C. § 1983. He alleged that the county took his property without just compensation in violation of the Fifth and Fourteenth Amendments.

Because Freed's claim implicated the GTPA's constitutionality, Michigan intervened under 28 U.S.C. § 2403(b).  That federal law entitles states to join "any action . . . wherein the constitutionality of any statute of that State affecting the public interest is drawn in question."  28 U.S.C. § 2403(b).  It also makes intervening states "subject to all liabilities of a party as to court costs."  *Id.*

The district court dismissed Freed's complaint for lack of subject matter jurisdiction, citing our decision in *Wayside Church v. Van Buren County*, 847 F.3d 812, 822-23 (6th Cir. 2017). *Freed v. Thomas*, No. 17-cv-13519, 2018 WL 5831013, at *2-3 (E.D. Mich. Nov. 7, 2018). Freed appealed and we reversed the dismissal. *Freed v. Thomas* (*Freed I*), 976 F.3d 729, 732 (6th Cir. 2020). Recognizing that the Supreme Court's ruling in *Knick v. Township of Scott*, 588 U.S. 180 (2019), partially abrogated *Wayside Church*, we held that Freed's claim was no longer jurisdictionally barred. *Freed I*, 976 F.3d at 734-41.

While Freed's first appeal was ongoing, the Michigan Supreme Court decided *Rafaeli, LLC v. Oakland County*, 952 N.W.2d 434 (Mich. 2020). *Rafaeli* held that the Michigan Constitution gives former owners of foreclosed property a right to the surplus proceeds from the sale of that property. *Id.* at 466.

## B.

On remand, the county defendants and the Michigan Attorney General conceded that, post-*Rafaeli*, Michigan law required the government to return surplus proceeds from a foreclosure sale to the property's former owner. Thus, the parties agreed that Freed experienced a taking.

But the parties disagreed about the value of Freed's taken property. The state and county argued that Freed could only recover the proceeds from the foreclosure sale that exceeded the amount to which the proceeds exceeded his debt. Freed, on the other hand, claimed that Gratiot County took his "equity" and owed him the entire fair market value of his home (minus liens) at the time of the foreclosure sale—almost $98,000. The county defendants also argued that neither Thomas nor the county could be held liable under various immunity doctrines.

The district court granted partial summary judgment to Freed on his takings claim. *Freed v. Thomas*, No. 17-cv-13519, 2021 WL 942077, at *2-4 (E.D. Mich. Feb. 26, 2021). We affirmed. *Freed v. Thomas* (*Freed II*), 81 F.4th 655, 657 (6th Cir. 2023). Citing *Rafaeli*, we concluded that the Fifth and Fourteenth Amendments required Gratiot County to pay Freed the difference between the foreclosure sale and his debt. *Id.* at 658-59. But we rejected Freed's

equity theory. *Id.* We also determined that the county was not immune from judgment but dismissed the claims against Thomas as barred by qualified immunity. *Id.* at 660, 661.

C.

Back in district court, Freed moved for attorneys' fees. Freed claimed that his attorney worked 366 hours on the case. For 274.5 of those hours, the attorney charged a rate of $525 per hour. The attorney's hourly rate was $595 for the remaining 91.5 hours, which were spent working on the *Freed II* appeal. To support his requested fee, Freed submitted a log of his attorney's work and Michigan Bar documents showing the average rates charged by attorneys in various areas within the state

The county opposed Freed's motion. So did the state of Michigan, which argued that it could not be made liable for attorneys' fees.

The district court awarded fees to Freed, though it reduced by 35% both Freed's claimed hours and rates. To explain the reductions, the court cited evidence that Freed's attorney overbilled for some services, as well as the benefit that Freed received from the *Knick* and *Rafaeli* decisions. The court also referenced, but did not apply, the *Johnson* factors, which we have stated courts may use to adjust fee awards. *See Reed v. Rhodes*, 179 F.3d 453, 471 & n.3 (6th Cir. 1999) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)).

The district court then ordered Gratiot County to pay 95% of Freed's fees and the state of Michigan to pay the remaining 5%. The court based that apportionment on its assessment that Michigan's intervention did not inordinately increase Freed's attorney's workload. All three parties appealed.

While the appeal was pending, Freed initiated post-judgment proceedings. We asked the parties to clarify whether those proceedings deprived us of jurisdiction. *See JPMorgan Chase Bank, N.A. v. Winget*, 920 F.3d 1103, 1106 (6th Cir. 2019). The parties assured us that the proceedings had concluded, and the district court record confirms as much. We turn, then, to the merits of the parties' appeals.

II.

In § 1983 suits, the "prevailing party" is entitled to "a reasonable attorney's fee." 42 U.S.C. § 1988(b). The "threshold determination" for district courts is whether the party seeking fees prevailed. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). If so, the court "determine[s] what fee is reasonable." *Id.* (internal quotation marks omitted).

We review the district court's prevailing-party-status determination de novo. *Miller v. Caudill*, 936 F.3d 442, 447-48 (6th Cir. 2019), *abrogated in part on other grounds by Lackey v. Stinnie*, 145 S. Ct. 659, 667-68 (2025). A party prevails when "a court conclusively resolves his claim by granting enduring relief on the merits that alters the legal relationship between the parties." *Lackey*, 145 S. Ct. at 671.

On the other hand, since the district court has a "superior understanding of the litigation," we review its fee award calculation for abuse of discretion. *Ne. Ohio. Coal. for the Homeless v. Husted*, 831 F.3d 686, 702-03 (6th Cir. 2016) (quoting *Hensley*, 461 U.S. at 437). A court abuses its discretion when it relies on clearly erroneous factual findings, incorrectly applies the law, or uses the wrong legal standard. *Id.* at 702. To properly calculate an attorneys' fee award, the district court must start by multiplying the "hours reasonably expended" by "a reasonable hourly rate." *Hensley*, 461 U.S. at 433. We presume that this "lodestar" figure represents a reasonable fee. *Murphy v. Smith*, 583 U.S. 220, 227 (2018). Still, the district court can adjust the initial fee award based on several factors, the "most critical" of which is "the degree of success obtained." *Hensley*, 461 U.S. at 434-36; *see also Reed*, 179 F.3d at 471. On appeal, we look for "a concise but clear explanation of [the court's] reasons for the fee award." *Husted*, 831 F.3d at 703 (quoting *Hensley*, 461 U.S. at 437).

A.

Before evaluating the district court's fee award calculation, we ask whether Freed could recover attorneys' fees in the first place. He could. Freed prevailed against both Gratiot County and Michigan, and the statute under which Michigan intervened explicitly makes the state subject to attorneys' fee liability.

1.

The district court correctly determined that Gratiot County owed Freed attorneys' fees. Indeed, the county concedes as much. And the record supports the conclusion that Freed partially prevailed against the county. The district court determined that the county had unconstitutionally taken Freed's property by foreclosing on his home, selling it, and then refusing to return the surplus proceeds from the sale to Freed. We affirmed that ruling. *Freed II*, 81 F.4th at 657. Although he did not prevail on every claim he brought against the county, Freed's partial success is enough to entitle him to at least some fee award. *Hensley*, 461 U.S. at 433.

2.

Freed can also recover fees from Michigan. He prevailed against the state, and neither sovereign immunity nor § 2403(b) prohibits a fee award.

a.

Michigan intervened under § 2403(b). That statute provides that intervening states, "shall, *subject to the applicable provisions of law*, . . . be subject to *all liabilities of a party* as to court costs." 28 U.S.C. § 2403(b) (emphasis added). But § 2403(b) does not tell courts how to assess an intervenor's court-cost liability; it only instructs that intervenors are liable like a party in the lawsuit. So, to determine Michigan's liability, we look to the "applicable provisions of law," that is, the substantive legal provisions governing what costs a party to the suit must pay. *Id.* In this case, because Freed brought a § 1983 action, Section 1988(b) controls the parties' liability for court costs. Thus, as an initial matter, the district court was correct to conduct the usual § 1988(b) analysis to decide Michigan's fee liability.

And we agree with the district court that Freed also prevailed against Michigan. As we noted in *Freed II*, "Michigan joined this case solely for the purpose of defending the constitutionality of the [GPTA]." *Freed II*, 81 F.4th at 661 n.4. On that argument, the state lost. That is because, although Gratiot County "voluntarily" foreclosed on Freed's home, *id.* at 661, it was statutorily obligated to retain any proceeds from the sale, *Harbor Watch Condo. Ass'n v.*

*Emmet Cnty. Treasurer*, 863 N.W.2d 745, 749 (Mich. Ct. App. 2014).  Since Michigan counties are bound by state law, Mich. Const. of 1963, art. VII, § 22, Gratiot County had to follow the GPTA when it foreclosed on Freed's home.  And because Freed successfully challenged the state's statutory tax-foreclosure process, he prevailed against Michigan.

b.

Michigan objects to the district court's imposition of attorneys' fees liability.  First, it claims sovereign immunity.  And second, the state argues it can only be made liable for attorneys' fees if its intervention was frivolous, unreasonable, or without foundation.  These arguments are unavailing.

i.

According to Michigan, because the state is not a "person" within the meaning of § 1983, it is also immune from fee liability under § 1988(b).  True, the district court correctly declined to enter judgment against Michigan because of the state's sovereign immunity.  *Freed II*, 81 F.4th at 661 n.4; *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (generally, states are not suable "persons" under § 1983); *Tennessee v. Garner*, 471 U.S. 1, 22 (1985) (state made "party only by virtue of 28 U.S.C. § 2403(b)" was "not subject to liability").  But such immunity does not extend to attorneys' fees.

As a starting point, Michigan is liable for court costs.  The plain text of § 2403(b) says so. Plus, it is well-established that court costs "have traditionally been awarded without regard for the States' Eleventh Amendment immunity."  *Hutto v. Finney*, 437 U.S. 678, 695 (1978).  This principle is no different in the § 2403(b) context.  According to the Supreme Court, even though § 2403(b) does not make intervening states "liab[le] for damages," it does subject them to liability for "*court costs*."  *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 70 n.25 (1997) (quoting 28 U.S.C. § 2403(b)).  We implied the same in *Freed II*.  *See* 81 F.4th at 661 n.4; *see also Lindke v. King*, No. 19-cv-11905, 2024 WL 4520338, at *2-3 (E.D. Mich. Oct. 17, 2024) (citing *Freed II*, 81 F.4th at 661 n.4) (noting that because "a state does not waive its sovereign immunity by intervening [under § 2403(b)]," the statute "expressly limits an intervening state's liability to court costs").

And in § 1983 suits, court costs include attorneys' fees. 42 U.S.C. § 1988(b); *see Sullivan Cnty. v. Home Indem. Co.*, 925 F.2d 152, 153 (6th Cir. 1991). Indeed, in enacting § 1988(b), "Congress had a perfectly intelligible reason for treating attorney fees as costs: to ensure that attorney fees could be awarded against a state notwithstanding [sovereign immunity]." *Home Indem. Co.*, 925 F.2d at 153 (internal quotation marks omitted). As a result, to the extent that Michigan must pay court costs despite its sovereign immunity, the state is also responsible for reasonable attorneys' fees.

ii.

Even if it can be subjected to fee liability, Michigan contends it must pay attorneys' fees only if its litigation position was frivolous, unreasonable, or without foundation. For this point, the state relies on *Independent Federation of Flight Attendants v. Zipes*, 491 U.S. 754 (1989).

*Zipes* began when a class of female flight attendants sued their employer airline for sex discrimination under Title VII. *Id.* at 755. The airline settled and agreed to credit the class members with seniority. *Id.* at 756. The flight attendants' union intervened, arguing that the seniority credit violated the union's collective-bargaining agreement. *Id.* at 757. The union lost, and the plaintiff class sought attorneys' fees from the union. *Id.* at 757-58.

The Court determined that losing Title VII intervenors are liable for attorneys' fees "only where the intervenors' action was frivolous, unreasonable, or without foundation." *Id.* at 761. It reasoned that the "crucial connection between liability for violation of federal law and liability for attorney's fees" counsels against levying fees against "blameless intervenors"—intervenors that have not "committed a legal wrong." *Id.* at 761-62. We have applied *Zipes*'s holding to fee awards against plaintiff-intervenors in § 1983 actions. *See Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 634-36 (6th Cir. 2013). But this case presents a distinct question: whether *Zipes* governs Michigan's liability for attorneys' fees after the state intervened to defend the GPTA's constitutionality and lost.

We hold that, in § 1983 suits, losing state intervenors under § 2403(b) can be made liable for fees even if the state's litigation position was not frivolous, unreasonable, or without

foundation.   Two considerations guide this conclusion: § 2403(b)'s text and *Zipes*'s focus on "blameless intervenors."  *Zipes*, 491 U.S. at 461.

The plain language of § 2403(b) applies no bar to the recovery of fees.  The statute simply directs that losing intervenor states can be made liable for attorneys' fees like any other party.  Applying that rule, Michigan is most analogous to a § 1983 defendant, because it intervened solely to counter Freed's claims.  And any traditional defendant would be liable for attorneys' fees in these circumstances.

To be sure, *Zipes* acknowledged that "the language of [Title VII] is substantially the same as" § 1988, and thus "they are to be interpreted alike."  *Id.* at 758 & n.2.  Following that directive, we have relied on *Zipes* in the § 1983 context before.  *See Binta B.*, 710 F.3d at 634-36 (addressing plaintiff-intervenors).  So Michigan's argument has some purchase because we are bound by Supreme Court interpretations of statutory language.

But a proper application of *Zipes* supports our reading of § 2403(b).  We think that the Court there fashioned its holding in the particular context of fee awards levied against intervenors who did not commit a legal wrong.  The case's language indicates as much; by its own terms, *Zipes* deals with "innocent intervenors."  *Zipes*, 491 U.S. at 763.  To that end, the opinion frequently differentiates "between wrongdoers and the blameless."  *Id.*; *see also id.* at 755, 761, 762, 764.  Our sister circuits have agreed that when "the [s]tate, unlike the intervenor in *Zipes*, is a constitutional violator," it is "not entitled to the solicitude *Zipes* showed the 'blameless' intervenor."  *Jenkins ex rel. Agyei v. Missouri*, 967 F.2d 1248, 1251 (8th Cir. 1992) (quoting *Zipes*, 491 U.S. at 761); *see Brat v. Personhuballah*, 883 F.3d 475, 476-77, 483-84 (4th Cir. 2018) ("[W]here an unconstitutional statute is involved, the blameworthy party under *Zipes* is the state that enacted the statute."); *Planned Parenthood of Cent. N.J. v. Att'y Gen. of N.J.*, 297 F.3d 253, 264-65 (3d Cir. 2002) (state intervenor was liable because it "defended the unconstitutional statute voluntarily and in doing so attempted to aid in the offending statute's enforcement" (quoting *Mallory v. Harkness*, 923 F. Supp. 1546, 1553 (S.D. Fla. 1996))); *see also Mallory*, 923 F. Supp. at 1552-53, *aff'd*, 109 F.3d 771 (11th Cir. 1997).

*Zipes*, therefore, should not apply to losing states intervening to defend a state law's constitutionality.  First, Section 2403(b) tells us to make those parties liable for "all . . . court costs," which includes attorneys' fees in the § 1983 context.  28 U.S.C. § 2403(b); *Home Indem. Co.*, 925 F.2d at 153.  Plus, the states are necessarily blameworthy because they are "responsible for enacting or enforcing the challenged statute." *Personhuballah*, 883 F.3d at 484 (emphasis removed).  Moreover, their intervention will require arguments that the law at issue did not violate the prevailing party's civil rights—arguments on which they will have lost.  Those kinds of intervenors fall outside of *Zipes*'s scope.  Accordingly, the district court did not err in subjecting Michigan to fee liability.

B.

Next, we look to the district court's fee award calculation.  Although the district court is owed deference, it "must apply the correct standard," *Fox v. Vice*, 563 U.S. 826, 838 (2011), and offer "a reasonably specific explanation for all aspects of a fee determination," *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 558 (2010).  In this case, the district court insufficiently explained its decision to reduce Freed's hours and rate by 35% each.

1.

In awarding attorneys' fees, the district court's first job is to determine the lodestar award: the reasonable number of hours expended multiplied by a reasonable hourly rate. *Binta B.*, 710 F.3d at 627.  This is a fact-intensive task, and thus the court must identify the facts upon which it relies.

The district court should "exclude from [its] initial fee calculation hours that were not 'reasonably expended.'" *Hensley*, 461 U.S. at 434 (quoting S. Rep. No. 94-1011, at 6 (1976)).  To do so, the court may "identify specific hours that should be eliminated," *id.* at 436, or it may rely on its "overall sense of a suit" and "use estimates" to calculate an attorney's time, *Fox*, 563 U.S. at 838.  Either way, it must explain "*why* the rejected hours were not reasonable." *Minor v. Comm'r of Soc. Sec.*, 826 F.3d 878, 884 (6th Cir. 2016) (emphasis added).

When the district court here reduced Freed's fee award, it gave some examples that suggested excessive billing by his attorney. For example, it noted that the attorney had billed an hour and a half travel time for service of a document. The court also observed that the attorney billed in quarter-hour increments, even for reviewing one-sentence court notices. Finally, the court briefly referenced "the objections that were made by the defendants," though it did not specify to which objections it was referring. RE 138, Tr. of Att'y Fee Hr'g, PageID 2154.

The court needed to be more specific in justifying the 35% reduction. It could have examined whether the case was overstaffed, or if the hours claimed were duplicative or wasteful. *Hensley*, 461 U.S. at 434; *Husted*, 831 F.3d at 704. It also could have looked to whether Freed's attorney billed for time that was not directly related to the instant litigation. *See Webb v. Bd. of Educ.*, 471 U.S. 234, 242 (1985). Instead, the district court merely identified relevant factors that might weigh in favor of a fee reduction without applying those factors to Freed's case. It is insufficient to say that Freed's attorney billed too many hours; the court must explain why those hours were unnecessary to adjudicating Freed's claim.

The same is true for the court's decision to reduce Freed's hourly rate. Although district courts "ha[ve] broad discretion in determining a reasonable hourly rate for an attorney," *Husted*, 831 F.3d at 715, their discretion is not unlimited. Here, the court simply said that reducing Freed's attorney's rate by 35% was appropriate because the attorney's hourly rate should have been between $350 and $375. But that does not explain why a rate between $350 and $375 per hour was reasonable to begin with.

Moreover, the court did not make a finding as to the prevailing market rate, which we have identified as a useful guideline for determining a reasonable hourly rate. *Id.* And the court did not reference other important factors like "awards in analogous cases" or "its own knowledge and experience in handling similar fee requests." *Id.* at 716 (quoting *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 499 (6th Cir. 2011)). To be sure, these considerations are not strictly necessary. However, in explaining its hourly-rate calculation, a district court should identify the salient features of its decision-making process and apply them to the case at hand. That did not happen here.

Freed's briefing points us to our decision in *Northcross v. Board of Education*, 611 F.2d 624 (6th Cir. 1979). And at oral argument, Freed said *Northcross* resolves this appeal. Although *Northcross* supports the conclusion that a district court abuses its discretion by making an "arbitrary or conclusory" fee determination, *id.* at 636, subsequent cases have made clear that *Northcross* overstated the district court's obligation. For instance, according to the *Northcross* court, "if a district court decides to eliminate hours of service adequately documented by the attorneys, it must identify those hours and articulate its reasons for their elimination." *Id.* at 637. But the Supreme Court has since emphasized that "courts . . . should not[] become green-eyeshade accountants." *Fox*, 563 U.S. at 838. Indeed, district courts need not "conduct an atomized line-item analysis of the hours" before determining the fee award. *Husted*, 831 F.3d at 704. *Northcross* is relevant and useful but should be applied in light of more recent developments in the law.

2.

After conducting the lodestar calculation, the district court can adjust the award based on litigation-specific considerations. *Binta B.*, 710 F.3d at 628. The most important factor at this stage is the extent to which the party seeking fees prevailed. *Id.* (quoting *Hensley*, 461 U.S. at 436). Here, Freed only partially prevailed in two senses. First, he won only on his takings argument, and even there, his equity theory failed. Second, Freed's success was supported in part by intervening precedent.

The district court did not discuss Freed's unsuccessful arguments as a basis for the 35% reduction. But it did mention "the benefit that [Freed] received in this matter as a result of other cases." *See* RE 138, Tr. of Att'y Fee Hr'g, PageID 2154. Presumably, the court was referring to *Rafaeli* and *Knick*—the county and the state both cited these cases to argue that Freed achieved only limited success. Although district courts must consider a partially prevailing plaintiff's degree of success in calculating a reasonable attorneys' fee, they are not "mandated" to reduce the award in such circumstances. *Planned Parenthood Sw. Ohio Region v. Dewine*, 931 F.3d 530, 543 (6th Cir. 2019), *abrogated in part on other grounds by Lackey*, 145 S. Ct. at 667-68.

And the intervening precedent does not necessarily weigh in favor of reducing Freed's fees. To start with, by the time *Knick* and *Rafaeli* were decided, Freed had already briefed his takings claim before both the district court and this court. Those cases, when issued, vindicated Freed's arguments. Further, litigants are entitled to—and must—rely on binding precent. *Knick* eliminated only one of several jurisdictional hurdles that Freed faced. And although his takings claim may have been bolstered by *Rafaeli*, he made an additional and distinct logical leap: that his claim arose under the Fifth and Fourteenth Amendments as opposed to the Michigan Constitution. At any rate, if the district court intended to reduce Freed's fee award based on his partial success, it needed to offer a more detailed explanation for its decision to do so. *See Hensley*, 461 U.S. at 437.

The district court also mentioned, but did not apply, the *Johnson* factors. We suggested in *Reed* that district courts should turn to those factors only after determining the lodestar fee award. *See Reed*, 179 F.3d at 471-72; *see also Binta B.*, 710 F.3d at 628. *But see Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) (noting that the trial court can consider the *Johnson* factors "either in determining the basic lodestar fee and/or adjustments thereto"). In Freed's case, the fee hearing transcript indicates that the district court's decision to reduce Freed's fee award was based largely on its assessment that Freed's attorney claimed too many hours at too high a rate. So the court may not have needed to apply *Johnson*. On remand, whatever fee award the court provides, it should clarify the extent to which that award is based on factors beyond the initial lodestar calculation.

Finally, the county argues that Freed's fee award should not be greater than the amount he won on the merits. This argument is foreclosed by *City of Riverside v. Rivera*, 477 U.S. 561 (1986) (plurality opinion), where the Court held that fee awards in § 1983 cases do not need to be proportional to money damages. *Id.* at 574; *id.* at 585 (Powell, J., concurring in the judgment) (also rejecting a proportionality requirement); *accord Bldg. Serv. Loc. 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995) ("In the civil rights area, there is no requirement that the amount of an award of attorneys' fees be proportional to the amount of the underlying award of damages.").

Because we vacate and remand the district court's decision, we need not address the county's assertion that the fee award should be reduced even more.  And although we do not question the court's apportionment of fee liability between Gratiot County and Michigan, the district court may find it necessary to further explain its decision in the context of "the relative culpability of the parties, which of them was the focus of litigation and, consequently, which party's efforts required a larger portion of the plaintiff's counsel time." *Avenue Grille, Inc. v. Rootstown Twp.*, 113 F.3d 1234, 1997 WL 219740, at \*2 (6th Cir. 1997) (unpublished table decision).

## III.

For those reasons, we affirm Freed's entitlement to fees from Gratiot County and Michigan and vacate and remand for recalculation of the fee award amount.